UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                No. 08-CR-20534-DT

vs.                                Hon. Gerald E. Rosen

JOSE HERNANDEZ,

                Defendant.
_____/

OPINION AND ORDER DENYING DEFENDANT'S
<u>MOTION TO DISMISS INDICTMENT</u>

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____ May 18, 2009 _____

PRESENT:   Honorable Gerald E. Rosen
                    Chief Judge, United States District Court

## I.  INTRODUCTION

Defendant, Jose Hernandez, is charged in a one-count indictment for failure to update his registration as a sex offender under the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250.  On January 6, 2009, Defendant filed the instant Motion to Dismiss Indictment.   The Government responded to Defendant's Motion.  The Court heard the oral arguments of counsel on this matter on March 23, 2009 and, at the close of the hearing, ordered the parties to submit supplemental briefs by March 31, 2009.  Counsel have complied with the Court's order.

1

Having reviewed and considered the parties briefs, the oral arguments of counsel, and the Court's entire record of this matter, the Court is now prepared to rule on Defendant's Motion.  For the reasons set forth below, Defendant's Motion to Dismiss his Indictment will be denied.

## II.  FACTUAL BACKGROUND

In 1999, Defendant Jose Hernandez was convicted under Ohio law of Corruption of a Minor in violation of Ohio Revised Code, § 2907.04.  The conviction arose from a sexual relationship between Hernandez, who was at the time 19 years old, and his then 13-year-old girlfriend.[1] that resulted in pregnancy and the birth of their child on February 5, 1999.  When Hernandez attempted to sign the child's birth certificate, the hospital notified children's services, and charges were filed against him.

On May 12, 1999, Hernandez pled guilty to, and was convicted of, corruption of a minor, a misdemeanor in the first degree, in the Lucas County, Ohio Court of Common Pleas. He was sentenced to two years of  probation.  As an additional consequence of his conviction, Hernandez was classified as a "Sexually Oriented Offender," pursuant to Ohio law, and ordered to register as a sex offender under state law for a period of ten years.  As part of being a registered sex offender, Hernandez was  required to regularly verify his address with the Lucas County, Ohio Sheriff's Department.

Defendant initially registered as a sex offender in Lucas County, Ohio, in 1999.

---

[1] Defendant's Brief In Support of Motion to Dismiss Indictment states that Defendant's girlfriend was fourteen years old.

However, he failed to register and/or verify his address in 2000, 2001, 2002, 2004, 2006, and 2008. Moreover, Defendant was prosecuted twice in Ohio -- in 2004 and 2006 -- for failure to verify his address, which resulted in terms of imprisonment of 60 days and eight months, respectively.

The present indictment for failure to register as a sex offender in violation of 18 U.S.C. § 2250(a), stems from Defendant's failure to register or verify his address after he moved to Michigan from Ohio in August 2007.[2]

18 U.S.C. § 2250(a) provides:

(a)  In general. -- Whoever --

> (1) is required to register under the Sex Offender Registration and Notification Act;
>
> (2)(A)  is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
>
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>
> (3)  knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

---

[2]  According to the Government, Hernandez registered in Ohio in March 2007 but failed to register in 2008. Apparently, it was not until he applied for state assistance in Michigan in February 2008 that it was discovered that Hernandez had moved to Michigan some time after August 2007. He never registered as a sex offender any time during the time he resided in the State of Michigan.

shall be fined under this title or imprisoned not more than 10 years, or both.

Defendant now moves to dismiss the Indictment raising a number of theories.

Specifically, Hernandez argues that

(1)     he was not required to register as a sex offender under the SORNA;

(2)     prosecuting him under 18 U.S.C. § 2250 violates the *Ex Post Facto* Clause;

(3)     Congress' delegation of authority to the Attorney General violates the Separation of Powers;

(4)     the Attorney General's Interim Rule violates the Administrative Procedures Act;

(5)     18 U.S.C. § 2250 violates the Commerce Clause;

(6)     the failure of SORNA to provide a mechanism to challenge a person's designation or registration as a sex offender violates due process;

(7)     Hernandez has no duty to register because no jurisdiction has implemented SORNA;

(8)     SORNA violates the Tenth Amendment of the Constitution.

## III.  DISCUSSION

### A.     THE SEX OFFENDER REGISTRATION AND NOTIFICATION ACT

On July 27, 2006, President Bush signed into law the Adam Walsh Act Child

Protection and Safety Act of 2006 (the "AWA").  Title I of the AWA, entitled the Sex

Offender Registration and Notification Act ("SORNA"), created a national sex offender

registration law.  42 U.S.C. § 16901-62.  In relevant part, SORNA requires persons who

are "sex offenders," as defined under the Act, to register and maintain current information

in each jurisdiction (a) where the offender was convicted, (b) where the offender resides,

4

(c) where the offender is employed and/or attends school, and (d) requires that the offender register prior to his release from prison, or no later than three business days after any change in residence, employment or student status.  42 U.S.C. §§ 16911, 16913(a)-(c).  The SORNA also requires that each state establish an internet website, publishing information about sex offenders registered in its jurisdiction.  *Id.* § 16918.

The SORNA also establishes a "National Sex Offender Public Website" to be maintained by the Attorney General, which shall include "relevant information for each sex offender and other person listed on a jurisdiction's website," and make "relevant information" publicly accessible.  *Id.* § 16920.  It also requires that each state include in the design of its own website all field search capabilities needed for full participation in the national website.  *Id.* § 16918.

Finally, the AWA created a new federal crime for persons who are required to register under the SORNA but fail to do so.  18 U.S.C. § 2250.  With regard to the new crime, Congress delegated to the Attorney General the authority to determine whether the SORNA is  applicable to persons convicted of qualifying offenses before July 27, 2006, the date of the statute's enactment, as well as to those who were convicted "before. . . its implementation in a particular jurisdiction."  42 U.S.C. § 16913(d).  Congress also delegated to the Attorney General the authority to promulgate regulations to ensure that those persons, and anyone who cannot receive notice of their SORNA registration duties (because they already served their incarceration terms), be notified of their duties and are registered.  *Id.* §§ 16913(b), (d), 16917(a), (b).  The SORNA requires all states, the

5

District of Columbia, and several federally recognized jurisdictions to "substantially implement" the SORNA requirements by July 27, 2009. *Id.* §§ 16924(a)(1), 16925(a).

On February 28, 2007, the Attorney General promulgated an interim rule which was given immediate effect, applying the SORNA to all persons convicted of a qualifying sex offense at any time, including offenders whose convictions occurred prior to the enactment of the statute. 28 C.F.R. § 72.3.

B.     DEFENDANT'S ARGUMENTS FOR DISMISSAL OF THE
       INDICTMENT

1.     Applicability of SORNA to Defendant.

Defendant's first argument for the dismissal of the indictment is that he was not legally required to register as a sex offender under SORNA between October 2006 and 2008. He claims that, absent the promulgation of regulations by the Attorney General providing him with notice of his duties to register and specifying the means for doing so, he was not required to register under SORNA. Defendant further argues that the Interim Rule promulgated by the Attorney General in February 2007 does not provide a mechanism nor any procedures for state jurisdictions to inform those convicted pre-SORNA with notice of their SORNA registration obligations. He further argues that even the recently released Sex Offender Sentencing, Monitoring, Apprehending, Registering and Tracking ("SMART") Guidelines fail to provide the means and mechanisms to give persons in Defendant's position notice of their SORNA registration obligations. Moreover, Defendant argues that no states have "substantially implemented" SORNA.

6

(Defendant's Motion to Dismiss Indictment at ¶ 8).   Therefore, Defendant argues that

SORNA's registration requirements should not apply to him because there are no

procedures in place to notify him of his registration obligation, and neither Michigan nor

Ohio had substantially implemented SORNA at the time he is alleged to have committed

the charged violation of § 2250(a).

With regard to his arguments, Defendant cites the following excerpt from the

SMART Guidelines:

> With respect to sex offenders with pre-SORNA or pre-SORNA-
> implementation convictions who remain in the prisoner, supervision, or
> registered sex offender populations at the time of implementation. . .
> jurisdictions should endeavor to register them in conformity with SORNA
> as quickly as possible, including fully instructing them about the SORNA
> requirements, obtaining signed acknowledgment of such instructions, and
> obtaining and entering into the registry all information about them required
> under SORNA.  But this may entail newly registering or re-registering a
> large number of sex offenders in the existing sex offender population, and it
> may not be feasible for a jurisdiction to do so immediately.  Jurisdictions
> are accordingly authorized to phase in SORNA registration for such sex
> offenders in conformity with the appearance schedule of SORNA § 116.  In
> other words, sex offenders in these existing sex offender populations who
> cannot be registered within the normal SORNA time frame (i.e., before
> release from imprisonment or within three business days of sentencing for
> the registration offense) must be registered by the jurisdiction when it
> implements the SORNA requirements in its system within a year for sex
> offenders who satisfy the tier I criteria, within six months for sex offenders
> who satisfy the tier II criteria, and within three months for sex offenders
> who satisfy the tier III criteria. . . .

73 Fed. Reg. 38030-01, 38063-38064.

Nothing in the foregoing excerpt supports Defendant's claim that he had no duty to

register because the states of his residence had not yet fully implemented SORNA.

7

In fact, these same Guidelines explicitly provide:

> The applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program. Rather, SORNA's requirements took effect when SORNA was enacted on July 27, 2006, and they have applied since that time to all sex offenders, including those whose convictions predate SORNA's enactment.

73 Fed. Reg. 38030-01, 38046.  *See also*, p. 38063:

> As discussed in Part II. C of these Guidelines, SORNA applies to all sex offenders, including those convicted of their registration offenses prior to the enactment of SORNA or prior to particular jurisdictions' incorporation of the SORNA requirements into their programs.

*Id*.

Given that the Guidelines expressly state that SORNA applies to sex offenders convicted "prior to particular jurisdictions' incorporation of the SORNA requirements into their programs," the Court rejects Defendant's argument that SORNA does not apply in a particular state until that state has passed implementing legislation.  Moreover, courts addressing this issue have overwhelmingly held that SORNA is effective and applicable prior to state implementation of SORNA requirements.  *See e.g., United States v. Benton*, ___ F. Supp. 2d ___, 2008 WL 5273971 (S.D. Ohio 2008); *United States v. Trent*, 568 F. Supp. 2d 857, 865-66 (S.D. Ohio 2008); *United States v. Ditomasso*, 552 F. Supp. 2d 233, 238-239 (D.R.I. 2008); *United States v. Shenandoah*, 572 F. Supp. 2d 566, 578-79 (M.D.Pa. 2008); *United States v. Gould*, 526 F. Supp. 2d 538, 542 (D. Md. 2007); *United States v. Robinson*, 2008 WL 3895597 at *2-3 (E.D. Va. 2008).

The Court also rejects Defendant's argument that he cannot be prosecuted for

8

violating § 2250(a) because he was not obligated to register until informed of the

obligation by the Attorney General.   The vast majority of courts to have addressed this

issue have held that when the defendant in a prosecution for violating § 2250(a) was

notified by state authorities of his obligation to register as a sex offender under state law,

lack of notice of SORNA registration requirements is not a defense to that prosecution.

*See e.g., United States v. Trent, supra*, 568 F. Supp. at 866-67; *United States v.*

*LeTourneau*, 534 F. Supp. 2d 718, 722 (S.D. Tex. 2008); *United States v. Lovejoy*, 516 F.

Supp. 2d 1032, 1037 (D.N.D. 2007); *United States v. Gould, supra*; *United States v.*

*Adkins*, 2007 WL 4335457 (N.D. Ind. 2007); *United States v. Marcantonio*, 2007 WL

2230773 (W.D. Ark. 2007).

Defendant here was obviously made aware of his obligation to register under state

law.  He, in fact, did register in Lucas County, Ohio in May 1999.  He failed to register

for the next two years -- 2000 and 2001-- despite letters from the Lucas County Sheriff's

Department directing him to do so.  He registered again in August 2003, but failed to

register in 2004 and was prosecuted and sentenced to 60 days' incarceration for his

failure.  He registered in October 2005, but did not register in 2006 and was again

prosecuted and sentenced, this time to a term of incarceration of 8 months.  He registered

in March of 2007, but did not register any time thereafter.  The foregoing facts

demonstrate that Defendant had been notified of his obligation to register as a sex

offender under state law.  Accordingly, the Court rejects Hernandez's premise that this

prosecution must be dismissed because he was not notified of his obligation to register

under SORNA.

2.     Defendant's *Ex Post Facto* Claim

Defendant next argues that the retroactive effect  SORNA has on his pre-SORNA conviction violates the Constitution's ban against *ex post facto* laws. U.S. CONST. art. I, §9, cl. 3.  Specifically, Defendant contends that SORNA retroactively increases the potential penalty for failing to maintain his sex offender registration from a misdemeanor to a felony.   Since the increased penalty was not known or contemplated by Defendant at the time of his conviction, he argues that SORNA is an unconstitutional *ex post facto* law as applied to him.

Presumably Defendant's argument is predicated upon the Lyncher Act, 40 U.S.C. § 14072(i), effective October 21, 1998, which made it a federal crime for a person convicted of a criminal sexual offense against a minor who is required to register as a sex offender in his home state to fail to register as a sex offender in any other state in which the offender relocated or was employed.  40 U.S.C. § 14072(i). While a violation of the Lyncher Act carried a maximum penalty of ten years imprisonment, for a first time offender (such as Defendant), the penalty was a term of imprisonment of not more than one year.  *Id.*

In *Collins v. Youngblood*, 497 U.S. 37, (1990), the Supreme Court explained that a statute contravenes the Ex Post Facto Clause if it "punishes as a crime an act previously committed, which was innocent when done; [if it] makes more burdensome the punishment for a crime, after its commission[;] or [if it] deprives one charged with [a]

10

crime of any defense available according to law at the time when the act was committed." *Id.* at 41-43.

To determine whether the retroactive application of a statute violates the Ex Post Facto Clause, a court must first decide whether the statute is civil or criminal in nature. *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997); *Smith v. Doe*, 438 U.S. 84, 89-90 (2003). If Congress intended SORNA to impose punishment for a pre-existing crime, the statute violates the Ex Post Facto Clause.  *See Smith*, 538 U.S. at 92.  Conversely, if Congress intended via the statute to "enact a regulatory scheme that is civil and non-punitive, [the court] must further examine whether the statutory scheme is 'so punitive either in purpose of effect as to negate [Congress's] intention' to deem it 'civil.'"  *Id.; see also, United States v. May*, 535 F.3d 912, 919-20 ((8th Cir. 2008); *United States v. Lawrance*, 548 F.3d 1329, 1333 (10th Cir. 2008) (quoting *Kansas v. Kendricks*, *supra*, and *United States v. Ward*, 448 U.S. 232, 248-49 (1980)).  The courts normally defer to Congress's stated intent, and therefore, "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty."  *Kendricks, supra*.  Thus, the starting point for the Court in determining whether SORNA's statutory scheme is punitive or regulatory, the Court must first determine whether Congress "indicated either expressly or impliedly a preference for one label or the other."  *Smith*, 538 U.S. at 93.

SORNA is both civil in its stated intent and nonpunitive in its purpose.  Congress expressly declared its intent to create a "comprehensive national system for the

11

registration" of sex offenders, "[i]n order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators." 42 U.S.C. § 16901.  Every circuit to have addressed an *ex post facto* challenge to SORNA has concluded that the statutory scheme is a non-punitive, regulatory scheme, and does not impose punishment for pre-existing crimes.  *See United States v. Lawrance, supra*, 548 F.3d 1329, 1332-1336 (10th Cir. 2008); *United States v. May*, 535 F.3d 912, 919-920 (8th Cir. 2008); *United States v. Ambert*, 561 F.3d 1202, 1207-08 (11th Cir. 2009); *United States v. Dixon*, 551 F.3d 578, 584 (7th Cir. 2008); *United States v. Samuels*, 2009 WL 877698 (6th Cir., Apr 2, 2009) (unpublished decision).

The Supreme Court upheld the constitutionality of a state sex offender registration law very similar to SORNA after analyzing it under the Ex Post Facto Clause in *Smith v. Doe, supra*.  Like SORNA, the Alaska sex offender registration statute at issue in *Smith* required respondents to register as sex offenders, even though they had been convicted before the statute was enacted.  *Smith*, 538 U.S. at 91.  The Act in *Smith,* like SORNA, also subjected non-compliant sex offenders to criminal prosecution.  *Id*. Nevertheless, the Court concluded that the purpose of the act was not to impose punishment but to "enact a regulatory scheme that is civil and nonpunitive."  *Id*. at 92. The Court applied the two-part test, analyzing whether the legislature's intent was to create a civil, nonpunitive scheme and, if so, whether the effects of the legislation were so punitive to negate that intent.  *Id*. at 94-95.  The *Smith* court found that the Alaska legislature's intent had been to create a nonpunitive law because it had included language specifically stating that

12

intent.  *Id.*  Next, the Court determined that the net effect of the law did not override that

intent, even though the statute called for criminal action against violators because it had a

rational connection to a nonpunitive purpose; namely, protecting public safety "which is

advanced by alerting the public to the risk of sex offenders in their community."  *Id.*

(internal quotations omitted).

Many courts have relied on *Smith* in rejecting ex post facto challenges to § 2250

indictments.  *See e.g., United States v. May, supra*,; *United States v. Hinckley*, 550 F.3d

926, 937 (10th Cir. 2008); *United States v. Hann*, 574 F. Supp. 2d 827, 836-37 (M.D.

Tenn. 2008); *United States v. Gill*, 520 F. Supp. 2d 1341, 1344-45 (D. Utah 2007).

Defendant Hernandez nonetheless attempts to distinguish the statutory scheme in

*Smith*, arguing that, unlike *Smith*, the placement of SORNA's failure to register

provisions appear in the federal criminal code.  First of all, Defendant is mistaken with

regard to the placement of the Alaska statute.  The registration provisions in *Smith* were

actually codified in Alaska's criminal procedure code.  *See* Alaska Stat. § 12.63.010

(2000) (amended 2008); *Smith*, 538 U.S. at 94; *United States v. Lawrance, supra*, 548

F.3d at 1233.  Furthermore, the Supreme Court expressly rejected the argument that "[t]he

partial codification of the Act in the State's criminal procedure code" supported "a

conclusion that the legislative intent was punitive."  *Smith*, 538 U.S. at 95; *Lawrance*, 548

F.3d at 1334.

Moreover, as the circuit courts have observed, the only punishment that can arise

under SORNA comes from a violation of § 2250, which punishes convicted sex offenders

13

who travel in interstate commerce after the enactment of SORNA and who fail to register as required by SORNA.  The elements of § 2250 are: (1) being a sex offender, (2) traveling in interstate commerce, and (3) failing to register or update a registration.  As the Eighth Circuit observed in *United States v. May*, "[a]lthough [Defendant] became a sex offender by way of a conviction before enactment of SORNA, the first element merely identifies to whom the statute applies; it is not a triggering event."  535 F.3d at 920.  *See also United States v. Samuels*, 2009 WL 877698 at **5-6 (6th Cir., Apr. 2, 2009).  In *Samuels* the Sixth Circuit adopted the *May* court's reasoning, and found no *ex post facto* violation:

> Samuels traveled in interstate commerce after the enactment of SORNA and failed to update his registration in New York and to register in Kentucky. . . .  It is this behavior that is being punished.  Samuels is not being punished for his initial 1999 rape conviction.  Accordingly, Samuel's [ex post facto] argument is without merit.

*Id.  See also, United States v. Lawrance, supra*, 548 F.3d at 1333 (SORNA does not punish an offender for "pre-SORNA conduct; instead it penalizes him for his post-SORNA failure to register.").

Simply stated, Section 2250 is not an *ex post facto* law because it does not criminalize or increase the penalties for a defendant's act that occurred before its passage.  The only thing it penalizes is failing to register or update a registration after July 27, 2006.

For all of the foregoing reasons, the Court rejects Defendant Hernandez's *ex post facto* argument.

14

3.    <u>Congress's Delegation of Authority to the Attorney General</u>

Defendant also argues that the Court must dismiss his indictment because

Congress violated the non-delegation doctrine by delegating to the Attorney General the

authority to determine the retroactive effect of SORNA.  In particular, Defendant

challenges § 16913(d), which provides, in relevant part,

> The Attorney General shall have the authority to specify the applicability of
> the requirements of this subchapter to sex offenders convicted before July
> 27, 2006 or its implementation in a particular jurisdiction, and to prescribe
> rules for the registration of any such sex offenders and for other categories
> of sex offenders who are unable to comply with subsection (b) of this
> section.

The non-delegation doctrine is an aspect of the separation of powers.  *Mistretta v.*

*United States*, 488 U.S. 361, 371 (1989).  Under the non-delegation doctrine, Congress

"is not permitted to abdicate or to transfer to others the essential legislative functions with

which it is vested."  *Panama Refining Co. v. Ryan*, 293 U.S. 388, 421 (1935).  In

*Mistretta*, the Court explained the governing test for determining the constitutionality of a

delegation of authority by Congress to another branch of government:

> We... have recognized...that the separation-of-powers principle, and the
> nondelegation doctrine in particular, do not prevent Congress from
> obtaining the assistance of its coordinate Branches.  In a passage now
> enshrined in our jurisprudence, Chief Justice Taft, writing for the Court,
> explained our approach to such cooperative ventures:  "In determining what
> [Congress] may do in seeking assistance from another branch, the extent
> and character of that assistance must be fixed according to common sense
> and the inherent necessities of the government co-ordination."  *J.W.*
> *Hampton Jr., & Co v. United States*, 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed.
> 624 (1928).  So long as Congress "shall lay down by legislative act an
> intelligible principle to which the person or body authorized to [exercise the
> delegated authority] is directed to conform, such legislative action is not a
> forbidden delegation of legislative power."  *Id.* at 409, 48 S.Ct. at 352.

15

488 U.S. at 372.

Since the promulgation of the *Hampton* test, the Court has clarified the meaning of "intelligible principle" and has upheld statutes against non-delegation challenges finding that it is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *American Power and Light Co. v. Securities and Exchange Commission*, 326 U.S. 90, 105 (1946); *Mistretta v. United States, supra*, 488 U.S. at 372-73.  Indeed, since 1935, the Supreme Court has not struck down a single statue as an impermissible delegation of legislative power.  *See United States v. Ambert*, 561 F.3d 1202, 1213 (11th Cir. 2009).

The defendant in *Ambert,* like Defendant Hernandez, argued that Congress improperly delegated its legislative authority by allowing the Attorney General to determine the retroactive application of SORNA.  Applying *Hampton* and *Mistretta,* and their progeny, the Eleventh Circuit found no merit in Ambert's challenge:

> We are satisfied that Congress has provided the Attorney General with "intelligible principles" in the Sex Offender Registration and Notification Act.  Congress has undeniably provided the Attorney General with a policy framework in § 16901 to guide his exercise of discretion under § 16913(d); and it has made a series of legislative judgments in §§ 16911, 16913, 16914 and 2250 that constrict the Attorney General's discretion to a narrow and defined category.
>
> In the first place, Congress has broadly set policy goals that guide the Attorney General in how to apply his discretion.  Congress created SORNA with the specific design to prove the broadest possible protection to the public, and to children in particular, from sex offenders.  Section 16901 expressly sets forth the congressional purpose in these terms:  "In order to protect the public from sex offenders and offenders against children and in response to the vicious attacks by violent predators against the

16

victims listed below, Congress in this chapter establishes a comprehensive
national system for the registration of those offenders." 42 U.S.C. § 16901.
By setting forth the broad policy goal of protecting the public and seeking a
"comprehensive" national registry, Congress has suggested that the
Attorney General should require-pre-2006 sexual offenders to register to the
extent he determines it would contribute to the protection of the public and
the comprehensiveness of a national sex offender registry.

* * *

In the second place, Congress made virtually every legislative
determination in enacting SORNA, which has the effect of constricting the
Attorney General's discretion to a narrow and defined category. Thus, for
example, Congress defined the crimes which necessitate registration (42
U.S.C. § 16911); where the offender must register (42 U.S.C. § 16913(a));
the time period for registration (42 U.S.C. § 16913(b)); the method of
registration (42 U.S.C. § 16913(b), (c)); the nature of information that
registrants must provide (42 U.S.C. § 16914(a)(1)-(7)); the elements of the
new federal crime (18 U.S.C. § 2250(a)); and the penalty for violation (18
U.S.C. § 2250(a)). These legislative determinations, read *in pari materia*
with § 16913(d), have informed the delegation to the Attorney General in a
sufficiently clear way. The Attorney General is left only with the discretion
to determine whether this statute and all of its attendant requirements
articulated by the legislature apply to a particular, capped class of offenders
-- *i.e.*, those convicted prior to July 27, 2006. Congress has unambiguously
delineated its general policy, the public agency which is to apply it, and the
boundaries of the delegated authority.

*Id.* at 1213-15. *See also United States v. Hann*, 574 F. Supp.2d 827, 837 (M.D. Tenn.

2008) ("When § 16913 is read as a whole, it is clear that the statute only authorizes the

Attorney General to promulgate regulations in a limited number of circumstances. The

Attorney General's authority under § 16913(d) extends only to those currently

unregistered offenders literally unable to comply with (b) because of the age of their

convictions. This delegation is limited in nature and does not afford the Attorney General

the authority to legislate." *Id.* (citations and internal punctuation omitted.))

17

This Court agrees with the reasoning of the *Ambert* and *Mann* courts.

Indeed, all courts to have addressed this issue have concluded that Congress did not violate the non-delegation doctrine by its delegation of authority with respect to SORNA to the Attorney General.  *See e.g., United States v. Dixon*, 551 F.3d 578, 583-84 (7th Cir. 2008); *United States v. Howell*, 2008 WL 313200 (N.D. Iowa 2008), *aff'd*, 552 F.3d 709 (8th Cir. 2009);  *United States v. Trent,* 568 F. Supp.2d 857, 869-70 (S.D. Ohio 2008); *United States v. LeTourneau*, 534 F. Supp. 2d 718, 724-25 (S.D. Tex. 2008); *United States v. Gill*, 530 F. Supp. 2d 1341, 1349 (D. Utah 2007); *United States v. Cochran*, 2008 WL 2185427 (E.D. Okla. 2008); *United States v. David*, 2008 WL 2045830 (W.D.N.C. 2008).  This Court finds the result reached by these courts to be persuasive and similarly concludes that Congress did not violate the non-delegation doctrine by authorizing the Attorney General to determine the retroactive effect of SORNA.

4.    The Interim Rule's Compliance with Administrative Procedures Act

Defendant further attacks the applicability of the SORNA registration requirements to pre-SORNA convictions by arguing that the Attorney General's Interim Rule, 28 C.F.R. §72.3,  which set forth retroactive registration requirements for pre-SORNA convictions, violated the Administrative Procedures Act ("APA"), 5 U.S.C. § 553.  The APA requires that all rules must either comply with a 30-day notice and comment period or have "good cause" to forego the notice and comment period. 5 U.S.C. § 533.  The Attorney General did not provide the usual 30-day notice and comment

18

period for 28 C.F.R. § 72.3, but enacted the Interim Rule effective immediately under the "good cause" exception.

The APA permits agencies to enact rules without the 30-day notice and comment period for "good cause" where "notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B).  The Justice Department did comply with the APA requirement of incorporating the finding of good cause and a summary of the good cause justification within the interim rule.  *Id.* Specifically, the Justice Department included the following language in the interim rule:

> The immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements -- and related means of enforcement, including criminal liability under 18 U.S.C. § 2250 for sex offenders who knowingly fail to register as required -- to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA.  This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders," SORNA § 102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay in the effectiveness of a final rule.

SORNA Interim Rule, 72 Fed. Reg. 8894.

Defendant argues that the reasons articulated by the Justice Department are legally

insufficient to justify a "good cause" exception to enable the Justice Department to avoid the notice and comment requirement. Citing *Buschmann v. Schweiker*, 676 F.2d 352, 357 (9th Cir. 1982), Defendant contends that the "good cause" exception is an "emergency procedure" and should only be allowed when "delay would do real harm." Defendant's argument is not supported by the applicable case law.

Numerous courts addressing the merits of APA violation claims have unanimously decided that the SORNA Interim Rule does not violate the APA. *See e.g.,  United States v. Shenandoah*, 572 F. Supp. 2d 566, 589-90 (M.D.Pa. 2008);  *United States v. Vasquez*, 576 F. Supp. 2d 928, 940-41 (N.D. Ill. 2008); *United States v. Torres*, 573 F. Supp. 2d 925, 948-50 (W.D. Tex. 2008); *United States v. Gould*, 526 F. Supp. 2d 538, 546 (D. Md. 2008); *United States v. Keleher*,  2008 WL 5054116, **16-17 (E.D. Cal. 2008); *United States v. Robinson*, 2008 WL 4086474, *9 (S.D. Ga.2008); *United States v. David*, *supra*, 2008 WL 2045827 at * 8.  *See also United States v. Dixon*, 551 F.3d 578, 583 (7th Cir. 2008) (rejecting defendant's claim that SORNA violates the APA out of hand as "a frivolous argument.")  The Court joins these courts and finds that the Attorney General's explicit rationale demonstrates good cause for enacting the regulations without notice or comment, namely, to prevent a delay in implementation that could jeopardize the safety of the public and thwart the purposes of the Act.  Accordingly, the Court will deny Defendant's motion to dismiss to the extent that it asserts an APA challenge.

5.    SORNA's Constitutionality Under the Commerce Clause

Hernandez next argues that SORNA and its failure to register provisions violate

20

the Commerce Clause, and, therefore, his indictment for violating 18 U.S.C. § 2250 should be dismissed.  Specifically, Defendant claims that his conduct is purely intrastate because it concerns only his failure to register, which he claims has no effect on interstate commerce.  As discussed above, SORNA makes it a crime for any sex offender who "travels in interstate or foreign commerce" to "knowingly fail [] to register or update a registration as required by [SORNA]."  18 U.S.C. § 2250(a).  Such sex offenders are required to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a).  While Hernandez's failure to update and/or register took place in Michigan, he does not dispute that he traveled in interstate commerce between Ohio and Michigan in August 2007.

The Supreme Court has identified three areas that Congress may regulate under the Commerce Clause:  (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come from intrastate activities;" and (3) "those activities that substantially affect interstate commerce."  *United States v. Lopez*, 514 U.S. 549, 558 (1995); *see also United States v. Morrison*, 529 U.S. 598, 608-09 (2000); *Gonzales v. Raich*, 545 U.S. 1, 16 (2005).  Defendant Hernandez argues that SORNA's registration requirements have no connection to the "channels of interstate commerce" or "persons or things in interstate commerce," and, therefore, cannot be upheld under either of the first two prongs of *Lopez.*  Thus, Defendant maintains that SORNA's registration

21

requirements can only be upheld if they are determined to regulate  "activities that substantially affect interstate commerce."  However, according to Defendant, because SORNA does not purport to regulate "any sort of economic enterprise," it cannot be upheld under this third *Lopez* prong, either.

Defendant's discussion of Commerce Clause jurisprudence ignores the numerous courts that have found sufficient congressional authority for enacting SORNA and its penalty provisions under all three *Lopez* categories.  In fact, every circuit court -- and virtually every district court -- to have faced a Commerce Clause challenge to SORNA has rejected it.  *See e.g., United States v. May*, 535 F.3d 912, 921-22 (8th Cir. 2008); *United States v. Hinckley*, 550 F.3d 926, 939-40 (10th Cir. 2008); *United States v. Dixon*, 551 F.3d 578, 583 (7th Cir. 2008); *United States v. Ambert*, 561 F.3d 1202, 1210-12 (11th Cir. 2009); *United States v. Hardeman*, 598 F. Supp. 2d 1040, 1042-1047 (N.D. Cal. 2009); *United States v. Torres*, 572 F. Supp. 2d 925 (W.D. Tex. 2008); *United States v. Shenandoah*, 572 F. Supp. 2d 566 (M.D. Pa. 2008) (and cases cited therein).  Defendant, instead, relies upon the very few district court cases, *United States v. Guzman*, 582 F. Supp. 2d 305 (N.D.N.Y. 2008), *app. pending*, No. 08-5561 (2d Cir. 2008); *United States v. Hall*, 577 F. Supp. 2d 610 (N.D.N.Y. 2008), *app. pending*, No. 08-6004 (2d Cir. 2008); *United States v. Waybright*, 561 F. Supp. 2d 1154 (D. Mont. 2009), *app. pending*, No. 08-30260 (9th Cir. 2008); *United States v. Myers*, 591 F. Supp. 2d 1312 (S.D. Fla. 2008),[3]

---

[3]  Defendant appears to have overlooked the fact that the Southern District of Florida's *Myers* decision was abrogated by the Eleventh Circuit's decision in *Ambert*.

22

and *United States v. Valverde*, 08-000187 (E.D. Cal., Feb. 10, 2009), *app. pending*, No.

09-10063 (9th Cir. 2009), holding otherwise.

   With regard to the first two *Lopez* categories -- the channels and instrumentalities

of commerce -- as the Eleventh Circuit recently explained in *United States v. Ambert*,

> Plainly, congressional power to regulate the channels and instrumentalities
> of commerce includes the power to prohibit their use for harmful purposes,
> even if the targeted harm itself occurs outside the flow of commerce and is
> purely local in nature. . . .   Congress has repeatedly used this power to reach
> criminal conduct in which the illegal acts ultimately occur intrastate, when
> the perpetrator uses the channels or instrumentalities of commerce to
> facilitate their commission. . . .   These channels of commerce are the
> interstate transportation routes through which persons or goods move.
> These channels include highways, railroads, navigable waters, and airspace.
> . . . It [i]s the [defendant's] movement in interstate commerce, rather than
> the nature of the harm, that [i]s the linchpin of the analysis.

*Id*. at 1211 (citations and internal punctuation omitted).

   Applying the foregoing standards, the *Ambert* court determined that Section 2250

of SORNA withstood Commerce Clause scrutiny and rejected the defendant's argument

for dismissal of his indictment:

> Section 2250 of SORNA easily meets these standards.  Section 2250
> makes it a federal crime to fail to register as required under 42 U.S.C. §
> 16913 only where the offender "travels in interstate or foreign commerce,"
> or was convicted of a federal sex offense.  Thus, even if we were to assume
> that the harms and targeted illegal conduct was purely local in nature, the
> use of the *channels* and *instrumentalities* of interstate commerce is
> necessarily a part of the commission of the targeted offense under 18 U.S.C.
> § 2250.  Plainly, § 2250 focuses on sex offenders, like the defendant who
> travel in interstate commerce. . . .   SORNA does no more than employ
> Congress' lawful commerce power to prohibit the use of channels or
> instrumentalities of commerce for harmful purposes.  Moreover, as we
> made it clear in [*United States v.*] *Ballinger*, [395 F.3d 1218 (11th Cir.
> 2005) (*en banc*)], "[i]nstrumentalities of interstate commerce. . . are the

23

people and things themselves moving in commerce." [Citation omitted.] Thus, when a sex offender travels from one state to another, he is an instrumentality of interstate commerce, and by regulating these persons in SORNA, Congress has acted under its commerce clause power to regulate an instrumentality.

*Id.* (emphasis in original; some internal citations and punctuation omitted.)

In *United States v. Lawrance*, 548 F.3d 1329 (10th Cir. 2008), the Tenth Circuit similarly rejected the defendant's argument that his failure to register did not "substantially affect" interstate commerce under the third prong as discussed in *Lopez*, and that the application of SORNA to his case, therefore, violated the Commerce Clause. The court explained:

Whether such an activity has a substantial effect on interstate commerce is irrelevant, since the first and second prongs of *Lopez* confirm Congress's authority to regulate this type of activity. . . . Elaborating on Congress's regulatory power, the Supreme Court has held that Congress can certainly regulate interstate commerce to the extent of forbidding and punishing the use of such commerce as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin. In doing so, Congress may regulate not conduct *related* to interstate commerce but rather interstate commerce itself -- barring from the channels of interstate commerce a class of goods or people. Thus, Congress's authority to regulate is not limited to regulations with a narrowly economic purpose or impact, but rather the Commerce Clause allows Congress to keep the channels of interstate commerce free from immoral and injurious uses. In fact, the first prong, and even the second prong of *Lopez* focuses on statutes that prevent the use of interstate commerce that results in harm to the populations of states other than those where such harm originates.

Mr. Lawrance relies on *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), *Lopez* and *Jones v. United States*, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000), which examine statutes in which Congress attempted to prohibit purely intrastate activity via the third category of *Lopez* -- the "substantially affects" prong; however, SORNA clearly intends to regulate interstate activities, *i.e.,* the evasion of

24

sex offenders who have crossed jurisdictional lines.  Mr. Lawrance failed to keep his registration current in Arizona, did not register in Colorado, and then traveled in interstate commerce to Oklahoma after SORNA's July 27, 2006, effective date, evading his registration requirements yet again in Oklahoma.  With SORNA, Congress clearly and validly proscribed such evasive tactics by offenders who move across state lines, and we must reject Mr. Lawrance's arguments to the contrary.

548 F.3d at 1337 (emphasis in original; some internal citations and punctuation omitted).

*See also United States v. Hinckley, supra.*  Noting that a violation of Section 2250 comprises two elements --  post-SORNA failure to register coupled with interstate travel -- the court found that "[n]ot only was Mr. Hinckley a 'person...in interstate commerce,' but he also used the channels of interstate commerce on a daily basis.  Clearly his travel across state lines to and from Oklahoma falls under the first or second *Lopez* prongs.  Whether such an activity has a substantial effect on interstate commerce is irrelevant, since the first and second prongs of *Lopez* confirm Congress's authority to regulate this type of activity."  550 F.3d at 940.

The Eighth Circuit also rejected the defendant's Commerce Clause argument in *United States v. May*, 535 F.3d 912 (8th Cir. 2008).  As the Tenth and Eleventh Circuits found, the Eighth Circuit determined that "May was undeniably a 'person. . . in interstate commerce' in that he traveled and relocated between various states. . . .  May did so via the 'use of the channels of interstate commerce.'"  *Id.* at 921.  Therefore, the court found that SORNA derived its authority from both the first and second *Lopez* prong.  The *May* court then went on to analyze -- and ultimately reject -- the defendant's argument that his indictment pursuant to SORNA was substantially similar to the defendants' indictments

25

under the statutes at issue in *Lopez* and *Morrison*, which the Supreme Court found to violate the Commerce Clause:

> May attempts to argue his case is more akin to *Lopez*, in which the Supreme Court struck down the Gun-Free School Zones Act, and *United States v. Morrison*, in which the Supreme Court struck down the Violence Against Women Act (VAWA). *Lopez* and *Morrison* are distinguishable in two significant respects.

> First, the Gun-Free School Zones Act and the VAWA did not contain a jurisdictional "hook" -- or "jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce." Congress's addition of such a jurisdictional "hook" in the Gun-Free School Zones Act proved sufficient to validate the revised Gun-Free School Zones Act. SORNA includes an express and clear jurisdictional element for individuals not convicted pursuant to federal jurisdiction. *See* § 2250(a)(2)(B).

> Second, *Lopez* and *Morrison* related to the third *Lopez* prong: "a regulation of activity that substantially affects interstate commerce." SORNA is more easily supported by the first and second *Lopez* prongs. Thus, we need not address May's contention "SORNA was not accompanied by findings [that the activity in question exerted a "substantial influence on interstate commerce"] similar to those in support of the [Controlled Substances Act] regulation considered [and upheld] in [*Gonzales v.*] *Raich* [545 U.S. 1 (2005)]. Even if this argument effectively distinguished *Raich*, and the third *Lopez* prong, SORNA would still remain valid under the first two interstate commerce jurisdictional prongs.

*Id*. at 922 (citations and some internal punctuation omitted).

The Court finds the reasoning of the above courts persuasive. In enacting SORNA, Congress's aim was to create a uniform nationwide registration system to protect the public. SORNA clearly intends to regulate interstate activities, *i.e.,* the evasion of sex offenders who have crossed jurisdictional lines. By requiring that a sex offender travel in interstate commerce before finding a registration violation, SORNA

26

remains well within the constitutional boundaries of the Commerce Clause pursuant to the first and second prongs of *Lopez*.  Therefore, Defendant's "no substantial economic effect" on interstate commerce (and the lack of any "economic enterprise") arguments are irrelevant.

Defendant also appears to be arguing that even if the Court finds 18 U.S.C. § 2250(a) constitutional under the Commerce Clause by virtue of the interstate travel element, the predicate statute setting forth the registration requirements, 42 U.S.C. § 16913, contains no such "travel in interstate commerce" requirement.  Because the registration requirements apply to persons whose criminal activities were purely intrastate and who never traveled in interstate commerce, Defendant contends that the Court must find the entire SORNA scheme unconstitutional.

Defendant apparently ignores the fact that Congress has the ability "[t]o make all Laws which shall be necessary and proper" for the accomplishment of its Commerce Clause power.   U.S. Const. art. I, § 8, cl. 28.  In the seminal case of *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421 (1819), the Supreme Court articulated the meaning of the Necessary and Proper Clause:  "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional."  Under this power, Congress may regulate intrastate activity so long as the means employed by Congress are "reasonably adapted" to the attainment of a legitimate end under the commerce power.  *See United States v. Darby*,

27

312 U.S. 100, 121 (1941) ("[Legislation has often been sustained. . . when the means

chosen, although not themselves within the granted power, [are] nevertheless deemed

appropriate aids to the accomplishment of some purpose within an admitted power of the

national government." *Id.*)  As *Darby* makes clear, a law simply must be deemed a

rational and appropriate means to further Congress's regulation of interstate commerce.

*Id.*

The Supreme Court has recognized Congress's ability to regulate intrastate,

noneconomic activity that does not have a substantial effect on interstate commerce

pursuant to the Necessary and Proper Clause.

> [T]he authority to enact laws necessary and proper for the regulation
> of interstate commerce is not limited to laws governing intrastate activities
> that have a substantial effect on interstate commerce.  Where necessary to
> make a regulation of interstate commerce effective, Congress may regulate
> even those activities that do not themselves substantially affect interstate
> commerce.
>
> * * *
>
> The regulation of an intrastate activity may be essential to a
> comprehensive regulation of interstate commerce even though the intrastate
> activity does not itself "substantially affect" interstate commerce.
> Moreover, . . . Congress may regulate even noneconomic local activity if
> that regulation is a necessary part of a more general regulation of interstate
> commerce.  The relevant question is simply whether the means chosen are
> "reasonably adapted" to the attainment of a legitimate end under the
> commerce power.

*Gonzales v. Raich*, 545 U.S. 1, 35-37 (Scalia, J. concurring) (internal citations omitted).

Guided by these principles, courts have concluded that § 16913 of SORNA is

constitutional, even though, on its face, § 16913 does not have a jurisdictional "hook" to

28

fit under the first two prongs of *Lopez* and there is little evidence to show intrastate sex

offender registration substantially affects interstate commerce.  *See, e.g., United States v.*

*Howell*, 552 F.3d 709, 714-17 (8th Cir. 2009); *United States v. Ambert, supra*, 561 F.3d at

1211-12.

In *Howell*, the Eighth Circuit discussed in detail the necessity and appropriateness

of SORNA's registration requirements and their furtherance of Congress's commerce

clause power:

> When § 16913 is analyzed in relation to the purpose of SORNA, it is
> evident § 16913 is an "appropriate aid[ ] to the accomplishment" of tracking
> the interstate movement of sex offenders. *See Darby*, 312 U.S. at 121, 61
> S.Ct. 451. The requirements of § 16913 help establish a system by which
> the government can monitor the location and travels of sex offenders.
> Although § 16913 may reach a wholly intrastate sex offender for registry
> information, § 16913 is a reasonable means to track those offenders if they
> move across state lines.  In order to monitor the interstate movement of sex
> offenders, the government must know both where the offender has moved
> and where the offender originated.  Without knowing an offender's initial
> location, there is nothing to ensure the government would know if the sex
> offender moved. The registration requirements are reasonably adapted to
> the legitimate end of regulating "'persons or things in interstate commerce'"
> and "'the use of the channels of interstate commerce.'" *May*, 535 F.3d at
> 921 (quoting *Lopez*, 514 U.S. at 558-59, 115 S.Ct. 1624). Covering the
> registration of wholly intrastate sex offenders is merely incidental to
> Congress's tracking of sex offenders in interstate commerce. Therefore, §
> 16913 is constitutional under Congress's authority to use the necessary and
> proper means to further its commerce clause power because it "is a
> necessary part of a more general regulation of interstate commerce."
> *Gonzales*, 545 U.S. at 37, 125 S.Ct. 2195 (Scalia, J., concurring).

552 F.3d at 717.

Finding the *Howell* court's reasoning persuasive, the Eleventh Circuit in *Ambert*

synthesized the "necessary and proper" principles as they apply to SORNA follows:

29

As the Eighth Circuit recognized, in enacting § 16913 of SORNA, Congress did not focus on individual local registration as an end in itself, but rather as part of its goal to create a system to track and regulate the movement of sex offenders from one jurisdiction to another. Indeed, SORNA's introductory language makes it clear that SORNA was designed to create an interstate system to counteract the danger posed by sex offenders who slip through the cracks or exploit a weak state registration system by traveling or moving to another state without registering therein. Specifically, Congress has said that the purpose of the statute is "to protect the public from sex offenders and offenders against children" by "establish[ing] a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901 (emphasis added).

The jurisdictional wording of § 16913 similarly focuses on the movement of sex offenders across state borders and ensuring registration of offenders moving in this manner. Section 16913 requires sex offenders to register and keep their registration current, "in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student"; requires a new or changed registration "in at least 1 jurisdiction" within three days of a change in the above status; and requires that jurisdiction to "immediately provide that information to all other jurisdictions" where the offender must register a change. 42 U.S.C. § 16913(a), (c). Finally, an examination of § 16913 and § 2250 makes the interstate focus abundantly clear. Notably, § 16913 does not contain a federal enforcement provision against individuals who fail to register locally. The only federal enforcement provision against individuals is found in § 2250, which explicitly subjects state sex offenders to federal prosecution under SORNA only if they "travel in interstate or foreign commerce" and fail to register under § 16913. 18 U.S.C. § 2250(2)(b).

Section 16913 is reasonably adapted to the attainment of a legitimate end under the commerce clause. The requirement that sex offenders register under § 16913 is necessary to track those offenders who move from jurisdiction to jurisdiction.

561 F.3d at 1211-12 (some citations omitted).

This Court finds the Eighth Circuit's and Eleventh Circuit's reasoning persuasive

and joins those courts in upholding the constitutionality of § 16913. Section 16913 is

30

constitutional under Congress's authority to use the necessary and proper means to further

its commerce clause power because it is a necessary part of a more general regulation of

interstate commerce.  Defendant's Motion to Dismiss based on violation of the

Commerce Clause, therefore, will be denied.

6.      Due Process Considerations: Substantive and Procedural

        Defendant also argues that SORNA violates his due process rights (1) because the

statute provides no mechanism to challenge the registration or sex offender designation

process; (2) because he did not receive personal notice regarding his duty to register

under SORNA; and (3) because SORNA has not been implemented by any state,

including Ohio, he did not receive statutory notice.

        Defendants' second and third due process arguments are merely a rehashing of his

first statutory arguments which this Court has already rejected.  *See* Section III-B-1,

*supra*, and cases cited therein.  *See also United States v. Hinckley,* 550 F.3d 926, 938

(10th Cir. 2008)  (a "majority of courts have concluded that notice of a defendant's

obligations under state law is sufficient to satisfy the Due Process Clause's

requirements"); *United States v. Gould*, 536 F. Supp. 2d at 545 n. 8 (collecting cases).

        With regard to Hernandez's remaining argument that SORNA provides no

mechanism for him to challenge his registration or sex offender designation, the Supreme

Court has held that when a registry requirement is based on the fact of a previous

conviction (as opposed to the fact of current dangerousness), due process does not require

that the sex offender be afforded a hearing.  *See  Connecticut Dept. of Public Safety v.*

31

*Doe*, 538 U.S. 1 (2003).  Under SORNA *all* sex offenders are required to register; there is no provision requiring that the offender be found to be dangerous to trigger his registration requirement.  Therefore, the Act does not violate procedural due process.  *See United States v, Madera*, 474 F. Supp.2d 1257, 1264 (M.D. Fla. 2007), *rev'd on other grounds*, 528 F.3d 852 (11th Cir. 2008).

Defendant also raises a substantive due process argument.  This substantive component of the Due Process Clause protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *See Palko v. Connecticut*, 302 U.S. 319, 325, 326, 58 S.Ct. 149, 152 (1937). Fundamental rights protected by substantive due process are protected from certain state actions regardless of the procedures the state uses. *See Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258, 2268 (1997). When legislation is enacted that infringes fundamental rights, courts will review the law under a strict scrutiny test and uphold it only when it is "narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 1447(1993). The Supreme Court has recognized that fundamental rights include those guaranteed by the Bill of Rights as well as certain "liberty" and privacy interests implicit in the due process clause and the penumbra of constitutional rights. *See Glucksberg*, 521 U.S. at 720, 117 S.Ct. at 2267; *Paul v. Davis*, 424 U.S. 693, 712-13, 96 S.Ct. 1155, 1166 (1976). These special "liberty" interests include such rights as the rights to marry, to have children, to direct the education and upbringing of one's children and to marital privacy.  *Glucksberg*, 521 U.S. at 720, 117

32

S.Ct. at 2267. The Supreme Court, however, has been very reluctant to expand

substantive due process by recognizing new fundamental rights, explaining:

> [We] have always been reluctant to expand the concept of substantive due
> process because guideposts for responsible decisionmaking in this
> unchartered area are scarce and open-ended. By extending constitutional
> protection to an asserted right or liberty interest, we, to a great extent, place
> the matter outside the arena of public debate and legislative action. We
> must therefore exercise the utmost care whenever we are asked to break
> new ground in this field, lest the liberty protected by the Due Process
> Clause be subtly transformed into the policy preferences of the members of
> this Court.

*Glucksberg*, 521 U.S. at 720, 117 S.Ct. at 2267-68 (citations and some internal

punctuation omitted).

Defendant here argues a deprivation of his liberty interest. Although the Supreme

Court has recognized fundamental rights in regard to some special liberty and privacy

interests, it has not created a broad category where any alleged infringement on privacy

and liberty will be subject to substantive due process protection. *See Paul*, 424 U.S. at

713, 96 S.Ct. at 1166.  The circuit courts that have considered substantive due process

arguments regarding sex offender registries have upheld such registration and publication

requirements finding no fundamental right implicated and no constitutional infirmities.

*See, e.g., Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir.) (per curiam), *cert. denied*, 543

U.S. 817 (2004) ("Persons who have been convicted of serious sex offenses do not have a

fundamental right to be free from . . . registration and notification requirements . . . .");

*Doe v. Moore*, 410 F.3d 1337, 1344-46 (11th Cir.), *cert. denied*, 540 U.S. 1124 (2005);

*Gunderson v. Hvass*, 339 F.3d 639, 643 (8th Cir. 2003), *cert. denied*, 540 U.S. 1124

33

(2004); *Paul P. v. Verniero*, 170 F.3d at 404, 405 (3d Cir. 1999). *See also United States v. Madera*, *supra* ("The Act [SORNA] does not violate substantive due process because it does not infringe upon any fundamental right.")

When a statute does not implicate fundamental rights, we must ask whether it is "rationally related to legitimate government interests." *Glucksberg*, 521 U.S. at 728, 117 S.Ct. at 2271. The rational basis standard is "'highly deferential' and we hold legislative acts unconstitutional under a rational basis standard in only the most exceptional circumstances." *Doe v. Moore, supra* (quoting *Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir.2001)) SORNA meets the rational basis test because it is in the interest of government to protect the public from sex offenders, and knowing where offenders live enables the public to assess the risk and take protective measures as appropriate. *Doe v. Moore* at 1345. Therefore, Defendant's substantive due process claim is without merit.

7.   <u>SORNA and Federalism</u>

Defendant continues his constitutional attack against SORNA by alleging that the act "impermissibly encroaches upon state power," in violation of the Tenth Amendment to the United States Constitution. [Defendant's Brief in Support of Motion to Dismiss,  p. 19].  Defendant cites *In re Rahrer,* 140 U.S. 545, 554 (1891) for the proposition that the federal government may not enact laws that impedes the states' authority to regulate its citizenry through powers traditionally belonging to the state.  Defendant also cites *Kansas v. Mugler*, 123 U.S. 623 (1897), to highlight the federalist principle that "police power" is retained by the states to control their "internal affairs" and, in so doing, "protect the

34

health, morals and safety of their people. . . ." *Id.* at 659.

Defendant states that SORNA violates the Tenth Amendment because the federal statute *requires* all states to create and maintain registries that must be "substantially implemented" by July 27, 2009. 42 U.S.C. § 16925(a). However, Defendant's use of the word "requires" in his description of the statutory mandate is misleading because states have the option of not implementing or creating SORNA compliant registries. *Id.* The statutory language of § 16925(a) clearly and unambiguously articulates a choice to not comply with SORNA, in which a noncompliant state merely loses a percentage of federal funding for its failure to comply.[4]

Defendant also alleges that SORNA is an impermissible intrusion of federal authority into state sovereignty because the implementation of SORNA would require states to shoulder the burden of securing the additional economic and financial resources necessary to create and maintain the registries. Defendant cites *Printz v. United States*, 521 U.S. 898 (1997), in support of his contention that SORNA is an unconstitutional violation of federalism. In *Printz*, the Supreme Court held that a federal law requiring state and local police officials to perform background checks on all potential handgun purchasers was unconstitutional. *Id.* at 933. Specifically the Court held, "[t]he Federal Government may neither issue directives requiring the States to address particular

---

[4] *See* 42 U.S.C. § 16925 (states not in compliance "shall not receive 10 percent of the funds that would otherwise be allocated for that fiscal year to the jurisdiction under [the Edward Byrne Memorial Justice Assistance Grant Program, 42 U.S.C. § 3750 *et seq*].")

35

problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Id*. at 935.  Defendant argues, that the state officials who would be charged with implementing and maintaining the registries are "analogous" to the officials in *Printz* and cannot be constitutionally be commandeered to operate a federal regulatory program.  However, Defendant misses a key distinction between the two regulatory programs:  in *Printz* state officials were mandated to enforce the program and their compliance was required;  whereas, under SORNA compliance is merely a condition to receiving a percentage of federal funding.

The distinction overlooked by Defendant is critical in constitutional analysis because the Supreme Court has consistently held that Congress may place conditions of compliance upon the receipt or withholding of federal funds.  *South Dakota v. Dole*, 483 U.S. 203, 206-07 (1987);  *New York v. United States*, 505 U.S.144, 145 (1992). Congress's power under the spending power is much broader than, and is not limited to, the specific authorities enumerated to Congress in Article I.  *United States v. Butler*, 297 U.S. 1, 65 (1936).   In *Dole*, the Court articulated that Congress's power to condition the receipt of federal funds under the spending power shall be valid, so long as the conditional spending/withholding is: (1) in the pursuit of "the general welfare;" (2) the conditional nature of  the spending/withholding is clear and unambiguous; (3) the condition is rationally related to the purpose of the federal interest,  program, or funding; and (4) the conduct required to comply with the condition is not barred by the constitution itself.  *South Dakota v. Dole*, 483 U.S. 203, 207-08 (1987).

Under the Spending Power Clause, Congress has the power to "provide for the common Defense and general Welfare of the United States." U.S. Const. Art. I § 8, cl. 1. The Supreme Court in *Butler* held that the phrase "general welfare" should be liberally construed to allow Congress the latitude necessary to determine what is required to promote the general welfare of the country. *Butler*, 297 U.S. at 64-65.  Moreover, the Supreme Court in *Dole* held that "courts should defer substantially to the judgment of Congress."  *Dole*, 483 U.S. at 207.

Congress has conditioned a 10% reduction in federal grants under the Edward Byrne Memorial Justice Assistance Grant Program to states that do not substantially comply with SORNA.  42 U.S.C. § 16925.  Congress determined that a national registry of sex offenders would promote the general welfare of the country by protecting potential victims of sexual crimes.  Therefore, Congress clearly acted within its power to condition federal funds on SORNA compliance in pursuing the general welfare of the United States.

The Court must next determine whether Congress's conditional withholding of federal funds to non-SORNA compliant states is clear and unambiguous.  *Dole*, 483 U.S. at 207.  The Supreme Court in *Penhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1 (1981) held that Congress must "speak with a clear voice, [to] enable the States to exercise their choice knowingly, cognizant of the consequences of their participation [or lack thereof]."  *Id.* at 17.  The statutory language of SORNA states that  "a jurisdiction that fails. . . to substantially implement this subchapter shall not receive 10 percent of the

funds that would otherwise be allocated for that fiscal year to the jurisdiction. . . ." 42

U.S.C. § 16925.  Congress unambiguously informed states in the statutory text  that if

they were not SORNA-compliant, they would suffer the consequences of forfeiting a

percentage of federal funding.  Therefore, Congress satisfied the requirement of making

the conditional nature of the withholding unambiguous, and states knew of their option to

comply with SORNA or forfeit federal funds.

Pursuant to *Dole*, the next step to evaluate the constitutionality of Congress's

exercise of conditional funding is to consider the relationship between the "federal

interest in particular national projects or programs" and the conditions placed on federal

funds.  *Dole*, 483 U.S. at 207-08.  The nexus required between the program and condition

is not a topic that has received neither extensive discussion nor clarification by the

Supreme Court. *Id.* at 207.  Essentially, the conditions placed on federal funds must be

related to the purpose of the federal program.  *Id.* at 207-08 (quoting *Massachusetts v.*

*United States*, 435 U.S. 444, 461 (1978)). The condition placed on the receipt of federal

funds under SORNA is substantial compliance with registration requirements.

Specifically, the 10 percent reduction of funds to states for failure to comply with

SORNA is only applied to funds that are available under the Edward Byrne Memorial

Justice Assistance Grant Program ("Justice Assistance Grants"), 42 U.S.C. § 3750 *et seq.*

The Justice Assistance Grants are designed "for use by the State or unit of local

government to provide additional personnel, equipment, supplies, contractual support,

training, technical assistance, and information systems for criminal justice."  42 U.S.C. §

3751.  Given the purpose of encouraging SORNA compliance and Justice Assistance

Grants, the relationship between the condition and the withholding of federal funds

cannot be deemed unrelated.

Lastly, for a congressional condition on the disbursement of federal funds to be

valid there must not be a "independent constitutional bar" that prevents the conduct

required by the condition. *Dole*, 483 U.S. 208. The Supreme Court in *Dole* explained that

an "independent constitutional bar" merely prevents Congress from conditioning funds on

behavior that the constitution prohibits the states from engaging in on their own.  *Id.*

Moreover, the requirement is not to be construed to mean that Congress can only

condition funds in areas and subjects enumerated in Article I.  *Id.*   The actions required

to create and maintain a SORNA compliant registry are not barred by the Constitution

and fall within the states' police power granted by the Constitution.

Therefore, SORNA does not violate the Tenth Amendment or the principles of

federalism.

<u>CONCLUSION</u>

For all of the reasons set forth above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss his Indictment

**[Dkt. # 12]** is DENIED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  May 18, 2009

39

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 18, 2009, by electronic and/or ordinary mail.

s/Ruth Brissaud
Case Manager